Case 4:24-cv-03913   Document 21   Filed on 01/27/25 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
January 27, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LAURIE ANDRASSY, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 24-3913 |
| | § | |
| JAN X-RAY SERVICES, INC., *et al.*, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

The complaint in this lawsuit alleges that a company's president inappropriately touched a subordinate female employee's knee in on two occasions, separated by approximately three months. The plaintiff, Laurie Andrassy, alleges that after she reported the two incidents to her supervisor, no corrective action was taken and that she was fired by Jan X-Ray Services, Inc. in retaliation for complaining about the harassment. Ms. Andrassy worked for Jan X from June 6, 2023, until she was terminated on January 5, 2024. (Docket Entry No. 5 ¶ 11).

Ms. Andrassy asserts claims for sexual harassment and retaliation under the Texas Commission on Human Rights Act ("TCHRA") against Jan X. She also asserts a claim for sexual harassment under the TCHRA against the company's president, John Carr. Jan X has moved to dismiss, arguing that Ms. Andrassy's complaint fails to allege conduct that meets the definition of sexual harassment under the TCHRA. (Docket Entry No. 8 at 11). Jan X also alleges that Ms. Andrassy's claim fails because she has pleaded no facts to show that Jan X knew about the alleged touching and failed to take remedial action. (*Id*. at 11-12). Jan X seeks dismissal of the retaliation claim on the basis that Ms. Andrassy has failed to allege facts showing a causal connection between

her complaint to her supervisor about Carr's conduct and her termination from the company. (*Id*. at 13).

## I. Background

Ms. Andrassy alleges that on June 27, 2023, Jan X's president, Carr, visited Houston to attend "new ownership meetings." (Docket Entry No. 5 ¶ 12). Carr asked Ms. Andrassy to have dinner with him the evening he arrived in Houston. (*Id*.). After Ms. Andrassy and Carr had dinner together, Carr said that he was not ready to return to his hotel room and wanted another drink. (*Id*. ¶ 13). Ms. Andrassy suggested going to a nearby piano bar. (*Id*.). Ms. Andrassy alleges that while she and Carr sat around the piano, "Carr began to caress [her] knee inappropriately." (*Id*.). Ms. Andrassy asserts that this act "was clearly sexual in nature and made [her] so uncomfortable that she immediately excused herself and went home." (*Id*.). Ms. Andrassy states that after that incident, she was "uncomfortable with Carr and afraid to be alone with him." (*Id*. ¶ 14). She does not allege that she reported this incident to anyone at Jan X immediately after it occurred.

On September 18, 2023, Ms. Andrassy attended a company-wide meeting in Charlotte, North Carolina. (*Id*. ¶ 15). After a company-sponsored dinner at a restaurant, Ms. Andrassy and her colleagues returned to the hotel and went to the bar. (*Id*.). At the hotel bar, Ms. Andrassy was seated next to Carr. (*Id*.). Ms. Andrassy alleges that Carr "reached under the table and began caressing her knee in a sexual manner once again." (*Id*.). Ms. Andrassy moved to another table and told one of her colleagues that Carr had touched her knee. (*Id*.). Later that evening, after she had returned to her hotel room, Ms. Andrassy sent her direct supervisor, Jim Barrett, a text message asking for a meeting to discuss the incidents with Carr. (*Id*.). Barrett told Ms. Andrassy that the issue was "handled." (*Id*.). Ms. Andrassy alleges that after reporting the incidents to Barrett, "she

2

immediately noticed that there was a shift in the level of support and guidance she was given from leadership — including Barrett." (*Id*. ¶ 20).

Ms. Andrassy asserts that up to this point, she had received no negative feedback about her performance at Jan X. (*Id*. ¶ 21). On January 5, 2024, Ms. Andrassy was "suddenly terminated by HR." (*Id*.). When Ms. Andrassy asked why she was being terminated, she was told that "her position was an experiment and that it was not getting the traction the company had hoped for and was thus being eliminated." (*Id*.). During her termination meeting, Ms. Andrassy told HR about the incidents with Carr. HR responded that it had no information about either incident or Ms. Andrassy's complaints to her supervisor. (*Id*.).

A few months after the termination, Ms. Andrassy received an automated email stating that Jan X was hiring an Advanced Services Manager. (*Id*. ¶ 23). Ms. Andrassy asserts that the duties of this position were very close to Andrassy's position, which had purportedly been "eliminated." (*Id*.).

I.   **The Legal Standard**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows

3

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks omitted, alterations adopted) (quoting *Twombly*, 550 U.S. at 558).

**II.     Analysis**

  **A.  The Sexual Harassment Claims**

Ms. Andrassy brings her claims under § 21.142 of the TCHRA. "Under § 21.142, a plaintiff can assert that her employer failed to remedy known sexual harassment." *Brown-Steffes v. Avis Budget Grp., Inc.*, 2023 WL 6386510, at *3 (N.D. Tex. Sept. 29, 2023) (citing Tex. Lab. Code Ann. § 21.042).  Sexual harassment claims under the TCHRA are analyzed under the same standard as sexual harassment claims brought under Title VII. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 650 (5th Cir. 2012) (citations omitted).

Jan X argues that Ms. Andrassy's claims fail because she alleges no verbal or physical conduct of a sexual nature. (Docket Entry No. 8 at 11). Jan X also asserts that Ms. Andrassy's claim fails because she pleads no facts showing that Jan X knew about the alleged inappropriate touching and failed to take remedial action. (*Id.* at 11-12).

"The elements of a § 21.142 claim are that (1) the plaintiff experienced sexual harassment, and (2) the employer or the employer's agents or supervisors (a) knew or should have known that the conduct constituting sexual harassment was occurring and (b) failed to take immediate and

appropriate corrective action." *Brown-Steffes*, 2023 WL 6386510 at *3 (citing Tex. Lab. Code Ann. § 21.142). "For the purposes of a § 21.142 claim, 'sexual harassment' means:

> an unwelcome sexual advance, a request for a sexual favor, or any other verbal or physical conduct of a sexual nature if: (A) submission to the advance, request, or conduct is made a term or condition of an individual's employment, either explicitly or implicitly; (B) submission to or rejection of the advance, request, or conduct by an individual is used as the basis for a decision affecting the individual's employment; (C) the advance, request, or conduct has the purpose or effect of unreasonably interfering with an individual's work performance; or (D) the advance, request, or conduct has the purpose or effect of creating an intimidating, hostile, or offensive working environment.

(*Id.*) (citing Tex. Lab. Code Ann. § 21.141).

The court disagrees with Jan X's contention that Ms. Andrassy has alleged no conduct of a sexual nature. Ms. Andrassy alleges that Carr, the company president, subjected her on two separate occasions to unwanted touching, which she describes as "caressing." In addition to her own characterization of the uninvited touching of her knee as sexual in nature, the circumstances surrounding both incidents — late at night, once with just the two of them at a bar, following a private meal between Ms. Andrassy and Carr, and one with the two of them and others at a bar after a company dinner — suggest that the touching was intended to be a sexual overture.

Jan X argues that Ms. Andrassy still has not met her pleading burden because she "fails to plausibly allege that the conduct affected her employment in any of the ways described in § 21.142." (Docket Entry No. 8 at 12). Jan X asserts that while Ms. Andrassy alleges that Carr's conduct "had the purpose or effect of unreasonably interfering with [Ms. Andrassy's] work performance," (Docket Entry No. 5 ¶ 25), she does not allege that her work performance declined, that she had difficulty in doing her work, or that she received negative feedback about her work as a result of the two instances of unwanted touching of her knee. (Docket Entry No. 8 at 12).

5

Ms. Andrassy alleges for the first time in her response to Jan X's motion to dismiss that after the first incident with Carr, she was "uncomfortable at work and did her best to avoid being alone with Carr … [which] took energy away from her work and impacted her confidence in the workplace." (Docket Entry No. 12 at 2). But Ms. Andrassy makes no such allegations in her complaint. And "[i]t is well-established that allegations contained in a response to a motion to dismiss are not appropriately considered in a Rule 12(b)(6) motion, which evaluates the sufficiency of the complaint itself and does not consider allegations not contained in the pleadings." *Coach, Inc. v. Angela's Boutique*, 2011 WL 2634776, at *2 (S.D. Tex. July 5, 2011). Ms. Andrassy has not met her pleading burden to allege facts that could show that the unwanted sexual conduct affected her ability to perform her work at Jan X. The conclusory statement that Carr's actions "had the purpose or effect of unreasonably interfering with [Ms. Andrassy's] work performance," which merely repeats an element of the TCHRA definition of sexual harassment, is insufficient under Rule 12(b)(6).

Nor has Ms. Andrassy alleged that Jan X or its agents failed to take prompt and effective corrective action in response to the reports of the unwanted touching, as required by § 21.142. Jan X argues that Barrett, acting as its agent, took appropriate corrective action by speaking with Carr about Ms. Andrassy's complaints. (Docket Entry No. 8 at 13). Jan X asserts that no more incidents of unwanted touching occurred after Barrett spoke to Carr about his inappropriate conduct. (*Id.*). Ms. Andrassy nonetheless asserts that Barrett's conversation with Carr was not appropriate remedial action. Ms. Andrassy notes that Barrett's statements that Jan X could "not afford to lose [Carr] right now," which signaled to Ms. Andrassy that "Carr's position was being prioritized over her own wellbeing in the workplace and that her complaint was not being taken seriously"; Barrett's plan to speak with Barrett privately rather than have Ms. Andrassy report the matter to

6

HR did not "comport[] with company policy" and "worked to prevent Andrassy from taking her own remedial action by contacting HR." (Docket Entry No. 11 at 3). Taking these points into account, the pleading nonetheless fails to state a claim for ineffective corrective action.

To determine whether Barrett, as an agent of Jan X, took prompt corrective action, "the test ... is not whether the harassment stopped but whether the action taken by the employer was reasonably calculated to end the harassment." *Abbood v. Tex. HHS Comm'n*, 783 Fed. Appx. 459, 462 (5th Cir. 2019). The court agrees with Ms. Andrassy that Barrett was partially motivated to speak to Carr about his actions to protect Carr, who Barrett believed to be crucial to the company's success. But the allegations in Ms. Andrassy's complaint also show that Barrett did talk to Carr to put an end to further incidents of inappropriate touching, and that Barrett did so shortly after Ms. Andrassy complained to Barrett about the harassment. The conversations worked; there were no more harassing incidents in the three months that Ms. Andrassy continued to be employed at Jan X.

Ms. Andrassy alleges that she did not report the incidents with Carr to HR. Had she done so, and HR had taken no corrective action, Ms. Andrassy's arguments that Jan X failed to promptly remedy the situation would have more merit. But Ms. Andrassy's allegations about Barrett's response, which ended the incidents of unwanted touching, are insufficient to show that Barrett's or Jan X's response was inadequate. Because Ms. Andrassy also "failed to bring her complaint to a 'higher-echelon' employee once dissatisfied with [her] supervisor's response," the court cannot infer that anyone at Jan X except Carr and Barrett knew about the incidents, and Carr's conversation with Barrett apparently ended the harassment. *See Knight v. Miss. Dep't of Pub. Safety*, 2007 U.S. Dist. LEXIS 55155, at *7 (S.D. Miss. July 27, 2007). The allegations do not state a claim of inappropriate corrective action.

7

### B. The Retaliation Claim

Ms. Andrassy also brings a claim for retaliation under § 21.055 of the TCHRA. Section 21.055 provides that it "is unlawful for an employer to retaliate or discriminate against a person who opposes a discriminatory practice, makes a file or charge, files a complaint, or testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." *Lawson v. Parker Hannifin Corp.*, 2014 U.S. Dist. LEXIS 144059, at *7 (N.D. Tex. Oct. 9, 2014) (citing Tex. Lab. Code Ann. § 21.055). "To prove a claim of retaliation, a plaintiff must show that (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action." *Id*. "In retaliation cases under the TCHRA, as in discrimination cases, Texas jurisprudence parallels federal cases construing and applying equivalent federal statutes, like Title VII." *Tex. DOT v. Lara*, 625 S.W.3d 46, 58 (Tex. 2021) (alterations adopted and quoting reference omitted).

Jan X argues that Ms. Andrassy has not sufficiently alleged that there was a causal connection between Ms. Andrassy's reporting of Carr's harassment to Barrett, a protected act, and her termination. (Docket Entry No. 8 at 14). Jan X asserts that Ms. Andrassy has not pleaded that Barrett, or Carr, were involved in the decision to terminate her. (*Id*.). Jan X further claims that Ms. Andrassy cannot show causation because she was terminated by an individual who worked for Jan X's HR team, who stated that she was not aware of the incidents with Carr when Ms. Andrassy referred to them in her termination meeting. (*Id*.). Ms. Andrassy responds that the HR employee who delivered the news of her termination was likely not the person who decided to fire Andrassy, but merely the messenger. (Docket Entry No. 11 at 8). Ms. Andrassy also states that the temporal proximity between her report of Carr's harassment and her termination – a period of roughly three and a half months—combined with the lack of documented performance issues and

8

"immediate shift in treatment from management" following her complaint of the incidents—all support an inference of a causal connection. (*Id.*).

For temporal proximity to serve as evidence of retaliation, the "protected act and the adverse employment action must be very close in time to establish causation by timing alone." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015) (quotation marks, citation, and alterations omitted). Fifth Circuit precedent in Title VII retaliation cases establishes that periods of two and a half months, two months, and six and a half weeks are close enough to show a causal connection. *Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571, 578 (5th Cir. 2020) (collecting cases). Ms. Andrassy alleges that three and a half months elapsed between when she reported Carr's actions and her termination from Jan X on January 5, 2023. This period is too attenuated to allow Ms. Andrassy to rely on timing alone. The question is whether the pleadings provide other factual allegations to support the inference of a causal connection.

Ms. Andrassy argues in her response to the motion to dismiss, for the first time, that after she reported the harassment, "communications with superiors became much less frequent, including TEAMS messages, calls, emails, and in-person communication." (Docket Entry No. 11 at 4). Ms. Andrassy also argues that her routine "weekly calls with management [] became less and less common until they stopped altogether." (*Id.*). She argues that "any questions she had were often ignored and went unanswered" and that Barrett "brushed [her] off when she asked to meet with him to discuss her position at work." (*Id.*). Finally, she argues that she was "suddenly excluded from work events" and that "Carr's demeanor around Andrassy was suddenly frustrated and aggressive." (*Id.*). If these were well-pleaded allegations in a complaint, taken together, these could support an inference of a causal connection between Ms. Andrassy's protected activity and

9

her termination. But Ms. Andrassy's complaint lacks these or similar allegations that could support her retaliation claim. Her complaint only states there was "a shift in the level of support and guidance she was given from leadership — including Barrett." (Docket Entry No. 5 ¶ 20).

Nor does the absence of negative feedback before Ms. Andrassy's termination suggest causation, as she argues. Jan X informed her that she was being terminated because her position was "experimental" and had not received as much "traction" as Jan X had hoped. The Fifth Circuit has previously held that "[e]limination of an employee's position as a result of a reorganization or a reduction-in-force is a legitimate, non-retaliatory reason for the employee's termination." *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019). Ms. Andrassy argues that the fact that she later received a promotional flyer from Jan X indicating that it wanted to hire someone for what sounded like a similar role establishes that Jan X's stated reason for terminating her was pretextual. (Docket Entry No. 11 at 10). But Ms. Andrassy alleges that she received the hiring notice about the similar position "a few months after" her termination. It is plausible that over the course of several months, Jan X's personnel needs might change. "At the pretext stage, the plaintiff must offer evidence 'that the adverse action would not have occurred but for [his] employer's retaliatory motive.'" *Goerz v. Kendall,* 2024 WL 4930385, at *2 (5th Cir. Dec. 2, 2024) (citing *Feist v. La., Dep't of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (internal quotations omitted)). Ms. Andrassy has failed to offer evidence of this strength or nature. Without more, Ms. Andrassy cannot sufficiently plead retaliation.

### C. The Claims Against Carr

Jan X argues that the claim sexual harassment claim against Mr. Carr must also be dismissed because § 21.142 of the TCHRA does not provide a cause of action against individual managers. This provision of the TCHRA defines an employer as "a person who: (A) employs one

or more employees; or (B) acts directly in the interests of an employer in relation to an employee." (Tex. Lab. Code Ann. § 21.141).

In *Brown-Steffes*, the court held that "§ 21.142 permits a plaintiff to bring a claim against an individual as well as an institutional employer, and that § 21.142 is 'sufficiently broad to encompass an individual who, though lacking a possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees.'" *Brown-Steffes*, 2023 WL 6386510 at *3 (citing *Reich v. Circle C Invs., Inc.*, 998 F.2d 324, 329 (5th Cir. 1993)). While Jan X asserts that the complaint is "devoid of any factual allegations that would satisfy this legal standard," the court disagrees. Ms. Andrassy has alleged that Carr was the company's president. That is sufficient to plead that Carr had the power to act on behalf of the corporation with respect to its employees. Regardless, Jan X is not the proper party to seek dismissal of this claim. *See Lahman v. Nationwide Provider Sols.*, 2017 WL 4169000, at *2 (E.D. Tex. Sept. 20, 2017) ("It is generally accepted that parties lack standing to seek dismissal of parties other than themselves."). Courts granting motions to dismiss by one codefendant against another do so only in limited circumstances, such as when all the parties agree that a particular defendant is a business entity that no longer exists. *See, e.g., Carr v. Spherion*, Civil Action No. 08-0326 (W.D. La. Sep. 4, 2008). The sexual harassment claim against Carr remains.

### III.     Conclusion

The motion to dismiss the sexual harassment and retaliation claims against Jan X under the TCHRA are granted. The claims are dismissed without prejudice and with leave to amend, but only once more, because Ms. Andrassy has amended her complaint once previously. Ms. Andrassy

must file her amended complaint no later than February 28, 2025. The sexual harassment claim against John Carr under the TCHRA remains.

SIGNED on January 27, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge