Case 4:24-cv-03913   Document 45   Filed on 09/05/25 in TXSD   Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
September 05, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LAURIE ANDRASSY, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 24-3913 |
| | § | |
| JAN X-RAY SERVICES, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Laurie Andrassy alleges that her former boss, John Carr, the president of Jan X-Ray Services, Inc., sexually harassed her by touching her knee inappropriately on two occasions. Andrassy alleges that when she reported the harassment to her supervisor, no corrective actions were taken, her superiors ceased communicating with her and shut her out of meetings, and she was fired. Andrassy asserts sexual-harassment and retaliation claims against both Jan X and Carr under the Texas Commission on Human Rights Act. (Docket Entry No. 26).

Andrassy has amended her complaint twice. (Docket Entry Nos. 5, 26). The court partially dismissed without prejudice her First Amended Complaint because she failed to state claims on which relief could be granted against Jan X. (*See* Docket Entry No. 21). To address the deficiencies in her sexual-harassment claim against Jan X, Andrassy needed to allege facts showing that the harassing conduct described in the complaint affected her employment, (*see id.* at 5–6), and that Jan X or its agents failed to take prompt and effective corrective action in response to her reports of unwanted touching, (*see id.* at 6-7). To address the deficiencies in her retaliation claim against Jan X, Andrassy needed to allege facts showing a causal relationship between her protected actions—her report of sexual harassment—and her termination. (*Id.* at 10).

1

Jan X and Carr both move to dismiss Andrassy's Second Amended Complaint, claiming that her pleading deficiencies remain. (Docket Entry Nos. 29, 34). For the reasons stated below, the court denies both motions to dismiss.

## I. Background

Andrassy was employed by Jan X from June 2023 until she was terminated on January 5, 2024. (Docket Entry No. 26 ¶ 11). Andrassy alleges that on June 27, 2023, Jan X's president, John Carr, visited Houston. (*Id.* ¶ 12). Carr asked Andrassy to make a reservation for dinner so that he could meet her in person. (*Id.*). After dinner, they went for drinks at a nearby piano bar. (*Id.*). Andrassy alleges that while she and Carr sat around the piano, "Carr, in a fashion that was unwelcome and offensive to Andrassy, began to caress [her] knee inappropriately." (*Id.*). Andrassy alleges that this act "was unequivocally sexual in nature and made [her] very uncomfortable." (*Id.*). She "quickly excused herself and went home" after Carr touched her. (*Id.*). Andrassy states that, after that incident, she was "uncomfortable around Carr . . . and did her best to avoid being alone with him." (*Id.* ¶ 13). She alleges that she did not report this incident to anyone at Jan X immediately after it occurred because "[Carr] was the president of the company, and she was a new employee." (*Id.*).

On September 18, 2023, Andrassy attended a company-wide meeting in Charlotte, North Carolina. (*Id.* ¶ 14). After a company-sponsored dinner, Andrassy and her coworkers returned to the hotel and went to the bar. (*Id.*). At the hotel bar, Andrassy was seated next to Carr. (*Id.*). Andrassy alleges that Carr "reached under the table and again began to caress Andrassy's knee in an inappropriate, sexual manner." (*Id.*). Andrassy moved to another table. (*Id.* ¶ 15). She told one of her colleagues, Regina Muir, an operations manager, that Carr had touched her knee in an inappropriate manner. (*Id.*). Later that evening, after she had returned to her hotel room, Andrassy

2

sent her direct supervisor, Jim Barrett, a text message asking for a meeting to discuss the incidents with Carr. (*Id*. ¶ 17). Barrett called her, and Andrassy described both incidents. (*Id*. ¶¶ 17–18). Barrett allegedly directed Andrassy not to contact the Human Resources Department because "the company could 'not afford to lose John [Carr] right now.'" (*Id*. ¶ 19 (alterations in original)). Andrassy told Barrett that "she did not believe this course of action comported with company policy and that she did not think it would be effective." (*Id.* ¶ 20). She alleges that Barrett "dismissed her concerns and insisted that he would privately speak with Carr." (*Id*.).

When Barrett raised the issue with Carr, Carr allegedly told Barrett that he did not remember touching Andrassy because he was drunk. (*Id*. ¶ 21). Andrassy alleges that after this conversation, Barrett "took no further action" to ensure that Andrassy was protected "from future harassment." (*Id*.). Barrett purportedly told Andrassy that the issue was "handled." (*Id.*).

Andrassy does not allege any further misconduct by Carr. She does allege that after she reported the incidents to Barrett, "the level of support and guidance she received from leadership—including her direct supervisor Barrett—decreased dramatically." (*Id*. ¶ 23). Management, including Barrett, allegedly communicated less frequently with Andrassy and "excluded [her] from work events." (*Id*. ¶ 24). She also alleges that "Carr's demeanor around [her] was suddenly frustrated and aggressive." (*Id*.).

Andrassy alleges that, up to this point, she had received no negative feedback about her performance at Jan X; rather, management told her that she was performing well. (*Id*. ¶ 26). But on January 5, 2024, Andrassy was "suddenly terminated by HR." (*Id*.). When Andrassy asked for the reason for the termination, she was told that "her position was an experiment and that it was not getting the traction the company had hoped for and was thus being eliminated." (*Id*.). During her termination meeting, Andrassy told a human-resources officer, Stacy Gross, about the incidents

with Carr.  (*Id*. ¶ 27).  Gross responded that she had no information about either incident or Andrassy's complaints to her supervisor. (*Id.*).

A few months after her termination, Andrassy received an automated email stating that Jan X was hiring an Advanced Services Manager.  (*Id*. ¶ 28).  Andrassy alleges that the duties of this job mirrored those Andrassy performed in her position, (*see id*.)—the position that the company told her it "eliminated" as a failed "experiment," (*id.* ¶ 27).

## II.   The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397,

4

401 (5th Cir. 2007) (quotation marks omitted) (alterations adopted) (quoting *Twombly*, 550 U.S. at 558).

### III. Analysis

#### A. The Claims Against Jan X

##### 1. Sexual Harassment

Section 21.142 of the Act allows a plaintiff to claim "that her employer failed to remedy known sexual harassment." *Brown-Steffes v. Avis Budget Grp., Inc.*, No. 3:23-cv-1747, 2023 WL 6386510, at *3 (N.D. Tex. Sept. 29, 2023). The Act borrows the legal standards that govern claims under Title VII. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 650 (5th Cir. 2012). The plaintiff must show "(1) the plaintiff experienced sexual harassment, and (2) the employer or the employer's agents or supervisors (a) knew or should have known that the conduct constituting sexual harassment was occurring and (b) failed to take immediate and appropriate corrective action." *Brown-Steffes*, 2023 WL 6386510, at *4 (citing TEX. LAB. CODE ANN. § 21.142). The statute defines "sexual harassment" as:

> an unwelcome sexual advance, a request for a sexual favor, or any other verbal or physical conduct of a sexual nature if: (A) submission to the advance, request, or conduct is made a term or condition of an individual's employment, either explicitly or implicitly; (B) submission to or rejection of the advance, request, or conduct by an individual is used as the basis for a decision affecting the individual's employment; (C) the advance, request, or conduct has the purpose or effect of unreasonably interfering with an individual's work performance; or (D) the advance, request, or conduct has the purpose or effect of creating an intimidating, hostile, or offensive working environment.

TEX. LAB. CODE ANN. § 21.141(2).

The court previously dismissed this claim against Jan X for two reasons. First, Andrassy alleged generally that Carr's sexual misconduct had the purpose or effect of unreasonably interfering with Plaintiff's work performance, without alleging facts to support this allegation.

5

(Docket Entry No. 21 at 6). Second, Andrassy failed to allege facts showing that Jan X and its agents "failed to take prompt and effective corrective action" in response to her report of harassment. (*Id.* at 6–7). Jan X does not renew its argument that the Second Amended Complaint contains the first deficiency,[1] and Andrassy marshals a legal theory that overcomes the second deficiency.

Jan X continues to claim that it took immediate and appropriate corrective action in response to the alleged misconduct it knew about. (Docket Entry No. 29 at 12–15). The Second Amended Complaint largely repeats the account that the court previously found insufficient: that shortly after Andrassy reported the unwanted sexual touching, Barrett talked to Carr, and Andrassy experienced no further harassment. (Docket Entry No. 26 at 7). Andrassy highlights two reasons the court should reach a different outcome: first, she alleged as a new fact that Muir took no action after Andrassy reported Carr's conduct; and, second, she asserts as a new theory that Jan X knew about but failed to correct Carr's behavior after the first incident in Houston. (Docket Entry No. 26 ¶¶ 31–32; *see* Docket Entry No. 31 at 9–10). The first argument fails but the second one succeeds.

Andrassy's Second Amended Complaint alleges for the first time that, after she reported Carr's behavior to Regina Muir, the east-region operations manager, Muir took no action to address the harassment. (Docket Entry No. 26 ¶¶ 15, 32). "What is appropriate remedial action will necessarily depend on the particular facts of the case—the severity and persistence of the harassment, and the effectiveness of any initial remedial steps." *Waltman v. Int'l Paper Co.*, 875

---

[1] The Second Amended Complaint claims Andrassy "was uncomfortable at work and did her best to avoid being alone with Carr, which took energy away from her work and impacted her confidence in the workplace." (Docket Entry No. 26 ¶ 30). Jan X's responsive briefing does not argue that this allegation fails to bring Andrassy's claim of inappropriate contact within the Act's definition of sexual harassment. *See* TEX. LAB. CODE ANN. § 21.141(2)(C) (defining sexual harassment of an unwelcome sexual advance that has the "effect of unreasonably interfering with an individual's work performance").

F.2d 468, 479 (5th Cir. 1989). The standard does not measure whether specific individuals at the corporation adequately responded to harassment allegations; the question is whether "the employer"—Jan X—took effective remedial action. *See id.* (focusing on whether "the employer failed to take prompt remedial action in response to the sexual harassment"). Andrassy pleaded facts showing that Barrett's response to her complaints was effective; Barrett talked to Carr "shortly after[wards]" and "no more harassing incidents" took place in Andrassy's remaining three months at Jan X. (Docket Entry No. 21 at 7); *see Longoria v. Kelly Services, Inc.*, No. 04-cv-2615, 2005 WL 1866145, at *6 (S.D. Tex. Aug. 4, 2005) (explaining that complete cessation of harassment "is a strong indicator that the employer's remedial actions were effective" (quoting *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 263 (5th Cir. 1999))). The Second Amended Complaint alleges that Andrassy complained to Muir and Barrett on the same day, and it does not allege that Carr harassed Andrassy in the time between Andrassy reported Carr's behavior to each of them. (Docket Entry No. 26 ¶¶ 14–21). Jan X did not fail to respond promptly to Carr's alleged sexual harassment based on the few additional hours that Andrassy's new allegations add to the time between she reported Carr's misconduct and Jan X's response. *See Fossil Grp., Inc. v. Harris*, 691 S.W.3d 874, 883 (Tex. 2024) (concluding that an employer promptly remediated sexual-harassment allegations by forwarding a complaint to human resources a day after receiving it and firing the offender a month later).

The question is whether Jan X had "actual or constructive knowledge of the harassment—thereby triggering the obligation to take prompt remedial action—before" Andrassy reported Carr's alleged harassment to Muir and Barrett. *Id.* at 884. Andrassy argues that Jan X knew of Carr's first incident of harassment in Houston because Carr is the president of Jan X and his knowledge of his own harassing conduct is imputed to the company. (Docket Entry No. 31 at 8–

9).  Jan X responds that the court cannot consider the Houston incident because Andrassy dropped from the Second Amended Complaint allegations that Carr travelled to Houston for work or that she met Carr for a work-related dinner.  (Docket Entry No. 29 at 12–13).  Jan X bases its argument on the Texas law of *respondeat superior*, which generally makes an employer vicariously liable for an employee's misconduct only if the employee acted within the scope of his or her employment.  *See Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998).

Jan X's argument is not persuasive.  The Texas statute imposes liability on a corporate employer when "the employer *or* the employer's agents or supervisors . . . know or should have known" that "conduct constituting sexual harassment was occurring."  TEX. LAB. CODE ANN. § 21.142(1) (emphasis added).  The statute creates no requirement that the employer's agents or supervisors must have learned about the harassment through the scope of their employment.  The statute lists as a basis for liability both knowledge that the "employer" and the "employer's agents or supervisors" possess.  This is inconsistent with applying traditional imputed-knowledge principles to all claims under Section 21.142.  Jan X's argument would make the term "employer's agents or supervisors" superfluous; corporations already possess the knowledge that their agents acquire during the scope of their employment.  *La Sara Grain Co. v. First Nat'l Bank*, 673 S.W.2d 558, 563 (Tex. 1984); *see also City of Dallas v. TCI West End, Inc.*, 463 S.W.3d 53, 55–56 (Tex. 2015) (explaining that courts should not interpret a statute in a way that makes part of the statute meaningless).

Nor does the statute separate a corporation's knowledge of harassment from the knowledge of harassment that its "agents or supervisors" acquired simply because those agents or supervisors committed the harassment.  "A supervisor's conduct may be imputed to his employer either because the supervisor was directly responsible for the harassment *or* because the supervisor failed

8

to act to abate sexual harassment by others after learning of it." *Wal-Mart Stores, Inc. v. Itz*, 21 S.W.3d 456, 472 (Tex. App.—Austin 2000, pet. denied) (emphasis in original).  The Texas Supreme Court recently affirmed this approach, explaining that, generally, an employer is on notice of harassment when "a person within the organization who has the authority to address the harassment problem or an affirmative duty to report harassment learns of the harassment in question"; in other words, when higher management or someone designated to report or address harassment claims learns of the claimed harassment. *Fossil Grp.*, 691 S.W.3d at 884–85 (internal quotations omitted) (quoting *Abbt v. City of Houston*, 28 F.4th 601, 607 (5th Cir. 2022)).  The Texas Supreme Court added that, alternatively, "the employer may be vicariously liable for the supervisor's conduct in creating a hostile work environment, without establishing the employer's negligence, because the employer has imbued such persons with 'the authority to effect a tangible change in a victim's terms or conditions of employment.'" *Id.* at 881 n.17 (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 439 (2013)).  An employee may proceed against the employer "[w]hen the harasser is a supervisor." *Id.*

Jan X can be held liable for a supervisor's sexual harassment that it did not take steps to address and remediate.  If the Houston incident qualifies as sexual harassment under the statute, then Jan X may be liable.  Jan X does not argue in its motion to dismiss or brief that Carr's alleged misconduct in Houston did not "unreasonably interfer[e] with" Andrassy's "work performance." TEX. LAB. CODE ANN. § 21.141(2)(C).  Nor does Jan X argue that it adequately responded to Carr's alleged misconduct in Houston.  Andrassy alleges that instead Carr made a second unwanted sexual advance months later. (Docket Entry No. 26 ¶¶ 13–14).

Jan X nonetheless challenges Andrassy's reliance on the Houston incident by arguing that Carr's alleged caressing was not within the scope of his employment.  (Docket Entry No. 29 at

9

11–13).² This second *respondeat-superior*-type argument misses the mark. Unwanted sexual advances can be actionable harassment if they have the "effect of unreasonably interfering with an individual's work performance." TEX. LAB. CODE ANN. § 21.141(2)(C). "[H]arassment occurring outside the physical workplace can form the basis of a hostile work environment claim." *Kurth v. Gonzales*, 472 F. Supp. 2d 874, 883 n.13 (E.D. Tex. 2007). The location of the harassment does not matter so long as its "effect," TEX. LAB. CODE ANN. § 21.14(2)(C), or "consequences" are felt "in the workplace," *Arredondo v. Schlumberger Ltd.*, 583 F. Supp. 3d 783, 810 (W.D. Tex. 2022) (quoting *Lapka v. Chertoff*, 517 F.3d 974, 983 (7th Cir. 2008)), *aff'd sub nom. Arredondo v. Elwood Staffing Services, Inc.*, 81 F.4th 419 (5th Cir. 2023); *see Dowd v. United Steelworkers of Am., Local No. 286*, 253 F.3d 1093, 1102 (8th Cir. 2001) ("The offensive conduct does not necessarily have to transpire at the workplace in order for a juror reasonably to conclude that it created a hostile working environment."). Jan X does not contend that Carr's alleged harassment in Houston did not unreasonably affect Andrassy's work environment; this argument is not raised in Jan X's briefs. The allegations that the harassment occurred during a dinner that an employee arranged and attended at the request of the company president, to occur outside the workplace, is not a basis to dismiss the harassment claim.

Andrassy states a harassment claim against Jan X under Section 21.142.

**2.      Retaliation**

"In a retaliation case, the plaintiff must first make a *prima facie* showing: 1) that he is engaged in a protected activity; 2) that an adverse employment action occurred; and 3) that a causal

---

² Andrassy previously alleged that on June 27, 2023, Carr visited Houston to attend "new ownership meetings" and asked Andrassy to book a dinner reservation for them. (Docket Entry No. 5 ¶ 12). The court cannot consider this allegation because an "amended complaint supersedes the original complaint," and Andrassy did not adopt or incorporate by reference "the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).

10

link existed between the protected activity and the adverse action." *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004). An employee engages in a protected activity when she "opposes a discriminatory practice," "makes or files a charge," "files a complaint," or "testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 137 (Tex. 2015) (quoting TEX. LAB. CODE ANN. § 21.055). The question at the motion-to-dismiss stage is whether the plaintiff "alleged facts supporting a reasonable belief that an unlawful practice occurred." *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1210 (5th Cir. 2021).

The court previously dismissed Andrassy's retaliation claim because she did not allege facts showing a "causal link" between her protected activity (reporting harassment) and the adverse employment action (her termination). (Docket Entry No. 21 at 8–10). Andrassy alleged facts supporting her claim in her response to Jan X's motion to dismiss. (*Id.*). In her response, Andrassy argued that after she reported the harassment, "communications with superiors became much less frequent, including TEAMS messages, calls, emails[,] and in-person communication"; "weekly calls with management . . . became less and less common until they stopped altogether"; "any questions she had were often ignored and went unanswered"; "Barrett brushed Andrassy off when she asked to meet with him to discuss her position at work"; she was "suddenly excluded from work events"; and "Carr's demeanor around Andrassy was suddenly frustrated and aggressive." (Docket Entry No. 11 at 4). Andrassy now incorporates these allegations in her Second Amended Complaint. (Docket Entry No. 26 ¶ 24).

Jan X responds that Andrassy still has not alleged a causal connection between her reporting of Carr's alleged misconduct and her termination. (Docket Entry No. 29 at 15–18). It argues that no causal connection exists because Gross, the human-resources employee who

terminated Andrassy, was unaware of Carr's alleged harassment before Andrassy's termination. (*Id.*).

Jan X is correct that a claim of retaliation against protected conduct founders if the decisionmakers did not know of the protected conduct. *See, e.g.*, *Norsworthy v. Houston Indep. Sch. Dist.*, No. 22-cv-821, 2022 WL 3043411, at *3 (S.D. Tex. Aug. 2, 2022) (first citing *Stewart v. RSC Equip. Rental, Inc.*, 485 F. App'x 649, 653–54 (5th Cir. 2012) (per curiam); and then citing *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 478–79 (5th Cir. 2015)). Jan X argues that Gross, a human-resources employee who did not know of Andrassy's complaints about Carr, was the one who made, as opposed to conveyed, the decision to terminate Andrassy's employment. Reading the complaint in the light most favorable to the nonmovant, Andrassy alleges that Gross was acting on the decision made by Andrassy's supervisors to fire her. (Docket Entry No. 26 ¶¶ 26–27). Andrassy alleges that Gross told her that Jan X eliminated her position because it was "an experiment" that "was not getting the traction the company had hoped for." (*Id.* ¶ 27). The "reasonable inference," *Ashcroft*, 556 U.S. at 678, is that Barrett, Andrassy's supervisor, or Carr, Jan X's president, made this pretextual decision after months of slowly isolating Andrassy.

"[A] pattern of adverse personnel actions over a period of weeks or months may demonstrate an employer's retaliatory animus notwithstanding the absence of close temporal proximity between the employee's initial protected activity and the employer's ultimate decision to terminate the employee." *Steele v. Kroenke Sports Enters., L.L.C.*, 264 F. App'x 735, 746 (10th Cir. 2008). A "pattern" of "increased mistreatment" that "culminat[es]" in an employee's termination can include refusals to assist with work, *Whittington v. Harris Cnty.*, No. 24-20172, 2025 WL 1864956, at *5 (5th Cir. July 7, 2025) (per curiam), or "reduction[s] in job responsibilities," *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994); *cf. Fleming*

12

*v. Methodist Healthcare Sys. of San Antonio, Ltd.*, No. 21-cv-01234, 2024 WL 1055120, at *16 (W.D. Tex. Mar. 11, 2024). Andrassy's allegations that weekly calls with management became less common; that questions she asked, including about her employment status, went unanswered; and that Jan X excluded her from work events, (Docket Entry No. 26 ¶ 24), are not adverse employment actions in themselves but may be probative of a retaliatory animus in the subsequent termination decision.

Lastly, Jan X falls back on its legitimate, nondiscriminatory reason for firing Andrassy: that her position was a failed experiment. *See Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019) ("Elimination of an employee's position as a result of a reorganization or a reduction-in-force is a legitimate, non-retaliatory reason for the employee's termination."). But "the *McDonnell Douglas* standard does not govern at the motion-to-dismiss stage." *Scott*, 16 F.4th at 1210 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). The burden-shifting approach to retaliation claims may be useful to frame the legal inquiry upon an employer's motion to dismiss. *Id.*; *accord Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019). But adhering too closely to the burden-shifting approach requires too much of Andrassy at the pleading stage. *Scott*, 16 F.4th at 1212.

For example, Andrassy alleges that Jan X's explanation for her termination is pretextual because, months after Andrassy's termination, Jan X began recruiting for substantially the same position that it told Andrassy was a failed experiment. (Docket Entry No. 26 ¶ 28). The court recognized that "[i]t is plausible that over the course of several months, Jan X's personnel needs might [have] change[d]," warranting a reversal of the company's previous, legitimate business decision. (Docket Entry No. 21 at 10). But at the motion-to-dismiss stage, Andrassy need only plead facts sufficient to raise a reasonable inference on the ultimate elements of her retaliation

13

claim: (1) Jan X took an adverse employment action against her (2) because she reported Carr's sexual advances. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470–71 (5th Cir. 2016). The facts Andrassy alleged—increasing isolation in the workplace over several months after she complained about Carr followed by her termination—give rise to a reasonable inference that Jan X terminated Andrassy in retaliation for reporting Carr's alleged misconduct. *See, e.g.*, *Steele*, 264 F. App'x at 746; *Whittington*, 2025 WL 1864956, at *5; *Fleming*, 2024 WL 1055120, at *16.

### B. Sexual-Harassment Claim Against Carr

Andrassy also brings a sexual-harassment claim against Carr under Section 21.142. That Section "permits a plaintiff to bring a claim against an individual as well as an institutional employer." *Brown-Steffes*, 2023 WL 6386510, at *5. The elements of a Section 21.142 claim against an employer and an individual are identical. A plaintiff must allege facts showing "that (1) the plaintiff experienced sexual harassment, and (2) the employer or the employer's agents or supervisors (a) knew or should have known that the conduct constituting sexual harassment was occurring and (b) failed to take immediate and appropriate corrective action." *Siegel v. BWAY Corp.*, No. 24-cv-0411, 2024 WL 1639916, at *8 (S.D. Tex. Apr. 12, 2024) (quoting *Brown-Steffes*, 2023 WL 6386510, at *4). Carr argues that Andrassy alleges no facts showing either that he was her "employer" under the Section or that he was acting within the course and scope of his employment when the alleged harassment occurred. (Docket Entry No. 34 at 9–10).

#### 1. Employer Under Section 21.142

Section 21.142 "uses a different definition of 'employer' than the rest of the" Act. *Brown-Steffes*, 2023 WL 6386510, at *5. "While 'supervisors and managers are not considered employers under [Section 21.002 of] the Texas Labor Code and, therefore, are not individually liable for . . . discrimination,' . . . both individuals and institutional employers may be liable for sexual

14

harassment under [S]ection 21.142." *Hernandez v. Ho'olaulima Gov't Sols., LLC*, No. 23-cv-439, 2024 WL 3648280, at *7 (W.D. Tex. Aug. 2, 2024) (quoting *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 686 (5th Cir. 2001)). For sexual-harassment claims, an "employer" is someone who: "(A) employs one or more employees; or (B) acts directly in the interests of an employer in relation to an employee." TEX. LAB. CODE ANN. § 21.141(1).

"One express purpose of the" Act "is to 'provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments.'" *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 (Tex. 2010) (quoting TEX. LAB. CODE ANN. § 21.001(1)). "Texas courts look to analogous federal law in applying the state Act." *Id.*; *see also Bautista v. SWBC Prof'l Employer Services I, LLC*, No. SA-22-cv-00247, 2023 WL 11979506, at *4 (W.D. Tex. Mar. 17, 2023) ("[A]s the TCHRA is partly intended to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964, the analogous federal statutes and the cases interpreting [Title VII] guide [a court's] reading of the TCHRA." (alterations in original) (quoting *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234–35 (5th Cir. 2016))). Courts have accordingly used the FMLA and FLSA definitions of "employer" as a reference point for construing Section 21.141(1)'s definition of the term. *Quinonez v. Perez*, 712 F. Supp. 3d 879, 889–90 (W.D. Tex. 2024). Under this framework, a plaintiff may sue "an individual who, though lacking in possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-à-vis its employees." *Brown-Steffes*, 2023 WL 6386510, at *5 (quoting *Reich v. Circle C Invs., Inc.*, 998 F.2d 324, 329 (5th Cir. 1993)); *see also Siegel*, 2024 WL 1639916, at *9; *Quinonez*, 712 F. Supp. 3d at 888–90. "The ultimate question is whether the individual had supervisory authority over the complaining employee and is

responsible in whole or part for the alleged violation." *Quinonez*, 712 F. Supp. 3d at 890 (citation omitted).

Carr argues that, other than stating he is the president of Jan X, Andrassy does not allege facts showing that he is an "employer." (Docket Entry No. 34 at 11–12; Docket Entry No. 36 at 2–4). The court previously held that Carr's status as president is sufficient to show "that Carr had the power to act on behalf of the corporation with respect to its employees." (Docket Entry No. 21 at 11). Carr's current arguments do not persuade the court to change its ruling.

Carr cites FLSA case law, which holds that an officer may be an employer so long as "operational control" over the employee's work "coincides" with his or her position as an officer. *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012). Carr argues that Andrassy's complaint does not include allegations showing that he exercises such operational control over the business or Andrassy. (Docket Entry No. 34 at 8–9; Docket Entry No. 36 at 2–4). The court disagrees. The Second Amended Complaint includes allegations that support an inference of Carr's control over Andrassy, her work, and the company. Andrassy alleges that she "did not report the [Houston] incident to anybody else at the company . . . because [Carr] was the president of the company, and she was a new employee," and she "feared that even if she was believed, her job would not be prioritized over that of Carr." (Docket Entry No. 26 ¶ 13). She also alleges that Barrett, her direct supervisor, told her "not to contact HR" because "the company could 'not afford to lose John [Carr] right now.'" (*Id.* ¶ 19 (alteration in original)). Andrassy also alleges that after she reported Carr's behavior to Jan X employees, "Carr's demeanor around [her] was suddenly frustrated and aggressive." (*Id.* ¶ 24).

Together these allegations make it plausible to find that Carr had substantial operational control over Jan X and was Andrassy's employer. *See Smith & Wesson Brands, Inc. v. Estados*

16

*Unidos Mexicanos*, 605 U.S. 280, 291 (2025) (explaining that, under "usual pleading rules," a plaintiff need only "plausibly allege[] conduct falling within the statute[]"). If Carr lacked operational control over Jan X, it is unlikely that Barrett would state that Carr was too important to the company to lose and that he would advise Andrassy to withhold reporting the alleged harassment to human resources. Similarly, if Carr lacked operation control over Jan X or Andrassy specifically, it is unlikely that Andrassy would fear retaliation and chose to withhold reporting the incident to human resources. Andrassy's additional allegations about Carr's changed demeanor to her and about her efforts to avoid Carr at work bolster the inference that Andrassy worked with Carr and fell within his chain of command. (*See* Docket Entry No. ¶¶ 13, 30). Combined with Carr's title as president, these allegations support the inference that Carr was "either . . . involved in the day-to-day operation [of Jan X] or ha[d] some direct responsibility for the supervision of" Andrassy, qualifying him an employer under the Act. *Gray*, 673 F.3d at 355 n.2 (quoting *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986)); *see also id.* (explaining that shareholders may be considered employers when they are "actively engaged in the management of the company" (citing *Dole v. Solid Waste Servs., Inc.*, 733 F. Supp. 895, 901 (E.D. Pa. 1989), *aff'd*, 897 F.2d 521 (3d Cir. 1990))).

Carr resisted this conclusion at oral argument in two ways: (1) Carr argued that Andrassy did not allege that he had operational control over Jan X because the Second Amended Complaint alleges the existence of an ownership group, which Carr suggests has authority over him; and (2) Carr argued that individual liability under the FLSA, and therefore the Act, requires more than allegations that a putative employer has the authority to hire and fire or supervise the harassed employee. Neither argument alters the court's conclusion that Carr qualifies as an employer under Section 21.142.

17

First, at the pleading stage, Andrassy's allegation of the existence of an ownership group cannot undermine her argument that Carr had operational control over Jan X and Andrassy's employment. When evaluating a motion to dismiss for failure to state a claim, the court must "draw all reasonable inferences in the plaintiff's favor." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). Although discovery may prove that the Jan X's ownership group in fact controls Jan X's operations and supervises its employees, at the motion to dismiss stage, the court must draw the reasonable inference that the alleged ownership group is a silent or marginally involved investor and that Carr, the president, is the chief officer who is "actively engaged in the management of the company." *Gray*, 673 F.3d at 355 n.2.

Second, Andrassy's allegations, which support an inference that Carr had the authority to hire and fire Andrassy and to control Jan X's operations, satisfy her burden at the pleading stage. To survive a motion to dismiss, plaintiffs must allege just one of the four economic-reality factors that determine an individual's status as an "employer" under the FLSA. *See Rosales v. Indus. Sales & Servs., LLC*, No. 20-cv-30, 2021 WL 5865706, at *3 (S.D. Tex. Dec. 10, 2021) (concluding that a plaintiff may survive a motion to dismiss by plausibly alleging just one of the four economic-reality factors); *Quinonez*, 712 F. Supp. 3d at 890–91 (applying *Rosales* to Section 21.142). Contrary to Carr's arguments, Andrassy satisfies the FLSA's requirements for pleading that an individual is an employer.

This pleading rule makes even more sense in the sexual-harassment context because two of the four economic-reality factors—the "alleged employer's control over the employee's pay and their maintenance of employment records—are of dubious applicability" to sexual-harassment claims. *Quinonez*, 712 F. Supp. 3d at 891. Whether a supervisor sets an employee's pay or controls an employee's records bears directly on the type of income disputes that give rise to claims

under the FLSA. *See id.* But those factors are largely irrelevant to the question whether Carr was responsible, in whole or in part, for the aspect of Andrassy's employment that was allegedly violated: "her right to be free from sexual harassment." *Id.* Andrassy alleged that Carr, "himself, sexually harassed her,"; Carr thus had "control over [Andrassy's] rights under [S]ection 21.142." *Id.* Andrassy alleged "a sufficient level of control and a nexus to the protected rights at issue" to state "a plausible Section 21.142 sexual harassment claim against" Carr. *Id.* (cleaned up).

### 2. Scope of Employment

Like Jan X, Carr claims that Andrassy does not plead facts showing that he acted within the course and scope of his employment when he allegedly harassed her. (Docket Entry No. 34 at 13). Carr emphasizes that the Second Amended Complaint does not allege that Carr's trip to Houston was a business trip. (*Id.*).

Carr's arguments fail for the same reasons Jan X's do. The Act cares only that the harassment had the "effect of unreasonably interfering with an individual's work performance." TEX. LAB. CODE ANN. § 21.141(2)(C). "[H]arassment occurring outside the physical workplace can form the basis of a hostile work environment claim," *Kurth*, 472 F. Supp. 2d at 883 n.13, if the employee suffers the harassment's "consequences in the workplace," *Arredondo*, 583 F. Supp. 3d at 810 (quoting *Lapka*, 517 F.3d at 983). After-hours harassment perpetrated by a non-supervisory employee usually will not qualify. *Id.* (citing *Duggins ex rel. Duggins v. Steak'N Shake, Inc.*, 3 F. App'x 302, 311 (6th Cir. 2001)). But Carr makes no argument in his motion to dismiss or responsive briefing that the alleged misconduct did not "unreasonably interfer[e]" with Andrassy's "work performance." TEX. LAB. CODE ANN. § 21.141(2)(C). The court declines to dismiss Andrassy's claims on the ground that Carr's alleged harassment occurred outside the scope of his employment.

## IV. Conclusion

The court denies Jan X's motion to dismiss, (Docket Entry No. 29), and Carr's motion to dismiss, (Docket Entry No. 34).

SIGNED on September 5, 2025, at Houston, Texas.

> _____
> Lee H. Rosenthal
> Senior United States District Judge